UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JENNIFER AFCAN, individually and on behalf of her minor son, J.A., | |
| Plaintiff, | 3:07-cv-00258 JWS |
| vs. | ORDER AND OPINION |
| UNITED STATES OF AMERICA, | [Re: Motion at Docket 161] |
| Defendant. | |

## I. MOTION PRESENTED

At docket 161, plaintiff Jennifer Afcan ("Afcan") moves pursuant to Federal Rule 37 for an award of expenses incurred in proving the applicable standard of care. Defendant the United States of America ("United States" or "the government") opposes the motion at docket 169. Afcan's reply is at docket 175. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

On October 10, 2009, Afcan formally requested that the United States "[a]dmit that the protocol for treating a patient who presents with an abscess and the signs and symptoms of the bacteria infection methicillin-resistant staphylococcus aureus is to incise and drain the infected tissue and administer an antibiotic to which methicillin-resistant staphylococcus aureus is not resistant."[1] The United States responded as

---

[1] Doc. 161 at 1–2; doc. 169 at 3.

follows: "This is an expert question and no answer is required until expert reports are due."[2] The United States did not supplement its response once expert reports had been filed. Afcan argues that sanctions are appropriate because she was forced to prove the standard of care at trial.[3]

### III. DISCUSSION

**A. Rule 37(c)(2) Sanctions are Appropriate**

Federal Rule 37(c)(2) provides that "[i]f a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof."[4] The Rule instructs that "[t]he court must so order unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit."[5]

The United States argues first that Afcan "should have addressed what she believed to be the inadequacies of the government's answers to admission requests" before trial.[6] Rule 37(c), however, "is intended to provide *posttrial* relief."[7] Consequently, the government's first argument fails.

The United States argues next that it "did not deny the request" and therefore, Rule 37 sanctions are not available.[8] Rule 37(c)(2) includes "within its scope *all failures*

---

[2]Doc. 161 at 2; doc. 169 at 3.

[3]*See* AS 09.55.540 (requiring proof of "the degree of care ordinarily exercised under the circumstances" in a medical malpractice action).

[4]Fed. R. Civ. P. 37(c)(2).

[5]*Id.*

[6]Doc. 169 at 2.

[7]Fed. R. Civ. P. 37 advisory committee's note (emphasis added); *see also* doc. 151.

[8]Doc. 169 at 4.

-2-

*to admit*," not just denials.[9] Because the United States did not admit the substance of the relevant request, it is immaterial that it did not deny it.

The United States argues that the requested admission would not have established the applicable standard of care.[10] It is conceivable that, even if the government made the requested admission, Afcan would have had to present some testimony equating protocol to the standard of care. Realistically, however, the requested admission would have resolved the issue–it is unlikely that the government would have taken the position that a protocol which it had admitted was the correct protocol was inconsistent with the standard of care.

The United States argues that there was good reason for its failure to admit insofar as the request "was made months before expert reports were due" and once reports were submitted, it "simply forgot to supplement its answer."[11] The court agrees that if forgetfulness sufficed as good reason, Rule 37(c)(2) would be rendered impotent.

Finally, the government argues it had reasonable ground to believe it might prevail on the issue. Afcan maintains the government could not have reasonably believed it would prevail on the issue given YKHC physicians' peer review of J.A.'s treatment, which concluded incision and drainage should have been done earlier. The government argues that it was "not bound by YKHC's evaluation which was done before extensive discovery was made."[12] The conclusions of the peer review significantly detract from the reasonableness of any ground the government had to believe it would prove that the standard of care was other than that stated in the request for admission. The government also argues that the YKHC guideline affords significant discretion. However, because the guideline indicates that under most circumstances incision and drainage is appropriate, the guideline also detracts from the reasonableness of any ground to believe that a different standard of care was applicable.

---

[9]Fed. R. Civ. P. 37 advisory committee's note (emphasis added).

[10]Doc. 169 at 4.

[11]Doc. 169 at 5.

[12]Doc. 169 at 6.

-3-

The requirements of Rule 37(c)(2) are satisfied and no exception applies.

**B. Amount**

Afcan is therefore entitled to "reasonable expenses, including attorney's fees, incurred in" proving the standard of care.[13] Afcan originally sought $47,075 in attorney's fees and $24,141.99 in costs.[14] In her reply memo, she reduced the amounts to $35,236 in attorneys' fees and $14,806.33 in costs.[15] The total she seeks is $51,042.33.

The government argues that Afcan had to present certain testimony and exhibits in order to prove recklessness, irrespective of its failure to admit the standard of care.[16] Afcan responds that proof of recklessness was subsumed in proof of the standard of care.[17] The task really is to separate the amount of work done to prove recklessness, which would also have been done to prove the standard of care from the amount of work done to prove recklessness only. The former is compensable,[18] but the latter would not be compensable.

Only some of the work needed to prove recklessness would have been done to prove the standard of care because proof of a standard of care provides only a baseline for evaluating potential recklessness. However, the court agrees with Afcan that much of the testimony presented and the costs incurred are necessarily subsumed in proof of the standard of care.

The government argues that "[i]t is easier to refer to work that conceivably might have been directly related to the" relevant request for admission.[19] Use of the

---

[13] Fed. R. Civ. P. 37(c)(2).

[14] *See* doc. 161-1 at pp. 9 and 12

[15] *See* doc. 175-1 at pp. 9 and 12.

[16] Doc. 169 at 9.

[17] Doc. 175 at 10. *See Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 939 (9th Cir. 1994).

[18] *Marchand*, 22 F.3d at 939.

[19] Doc. 169 at 10.

-4-

government's standard would depart from the language of Rule 37 insofar as it would ignore subsumed costs and fees that were incurred in proving the standard of care.

Plaintiff's second amended complaint asserted three claims: negligence, recklessness, and loss of society. A showing of recklessness would have entitled plaintiff to enhanced damages. Loss of society is a form of injury. Negligence, therefore, was Afcan's primary claim. The standard of care is one of four elements that a plaintiff must show under AS 09.55.540.

The invoice provided by plaintiff deducted all costs and fees which Afcan concluded were unrelated to the standard of care and reduced numerous timekeeper entries by 50 percent. The court has reviewed the plaintiff's timekeeper entries and agrees that elimination of all entries prior to February 1, 2010, is appropriate and that the reduction to those items plaintiff reduced by 50 percent is appropriate. However, the court finds that additional deductions are appropriate. The first is a deduction for all timekeeper entries from 2/12/10 thru 5/10/10. These were necessary, but are unrelated to proving the standard of care. The deduction for this first group of entries totals $3,624.00. The second group of items to be deducted are the timekeeper entries for 6/23/10, the first of the entries for 6/24/10, the second and third entries for 6/25/10, the entry for 7/6/10, and the entry for 9/8/10. The total for this group is $2,961.00. Finally, the court deems it appropriate to apply the same 50 percent reduction used by Afcan for some of the timekeeper entries to all of the entries not already excised by Afcan from 11/05/10 through the first entry on 2/16/11 and the second to last entry for 2/17/11. This reduction totals $3,613.75. The total of all deductions is $10,198.75. The court will award attorney's fees of $25,037.25 ($35,236.00 less $10,198.75).

With respect to costs, Afcan eliminated many entries and reduced others by half, including Dr. McNamara's expert fee billed on 2/1/10 and 8/12/10. The court concludes that consistency requires a reduction of 50 percent for the McNamara-related items billed on 5/26/10, 7/07/10, 7/13/10, and 9/14/10. These reductions add up to $941.71. Next, the court also finds a 50 percent reduction is appropriate for the following: the two entries on 1/12/11, the entry for 2/16/11, both entries for 2/18/11, the entry for 3/8/11, the first and third entries 3/29/11, and the entry for 4/1/11. This reduction sums to

Case 3:07-cv-00258-JWS   Document 180   Filed 05/13/11   Page 5 of 6

$1,995.11. Finally, in the court's view the following expenses should be deducted: all costs billed on 3/29/11, except for the first and third listed. These are costs that had to be incurred regardless of the issue at hand. This deduction totals $3,679.64. The total reduction in costs is $6,616.46. The court will award costs of $8,189.87 ($14,806.33 less $6,616.46).

## V.  CONCLUSION

For the reasons above, plaintiff's motion at docket 161 is **GRANTED** as follows: The United States shall pay the sum of $25,037.25 in attorney's fees and $8,189.87 in costs for a total award of $33,227.12.

The parties are advised that the court will NOT entertain a motion for reconsideration of this order.

DATED at Anchorage, Alaska, this 13th day of May 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE